# Attorney General's Authority to Reprogram Funds for the United States Marshals Service to Avoid Deficiencies

The Attorney General has authority to reallocate funds among programs of the United States Marshals Service and to make available to the Service funds presently allocated to other programs and activities funded through the same lump sum appropriation.

An agency head's discretion to reprogram appropriated funds within a lump sum appropriation account in an antideficiency situation would be limited only if a specific statutory directive required the expenditure or distribution of funds in a particular manner.

June 20, 1980

## MEMORANDUM OPINION FOR THE DEPUTY ATTORNEY GENERAL

This memorandum responds to your request for our analysis of the Attorney General's authority to allocate funds for the United States Marshals Service (USMS) in order to avoid a deficiency in USMS appropriations prior to the end of fiscal year 1980. We conclude that, in order to achieve compliance with the Antideficiency Act (the Act), 31 U.S.C. § 665, the Attorney General has authority to reprogram funds among programs within the USMS, and to make available to the USMS funds presently allocated to other programs and activities funded through the same lump sum appropriation.

Like all federal agencies, the Department of Justice, including the USMS, is subject to the requirements of the Antideficiency Act. Among other things, the Act requires that funds appropriated to an agency for a definite period of time

> be so apportioned as to prevent obligation or expenditure
> [of the appropriation] in a manner which would indicate a
> necessity for deficiency or supplemental appropriations
> for such period . . .

§ 665(c)(1). Such an apportionment, in effect, is a scheduling of anticipated obligations or expenditures to assure that an agency will not run out of funds prior to the end of the period for which funds have been appropriated. The Office of Management and Budget (OMB), under

§ 665(d), apportions Department of Justice funds on a quarterly basis.[1] It would be unlawful for any officer or employee of the Department to authorize or create obligations or make expenditures in excess of any OMB apportionment. § 665(h).

In order to help ensure that the USMS will not encounter deficiency spending in the fourth quarter of this fiscal year, and thus to achieve compliance with the Antideficiency Act, the USMS, on May 30, 1980, submitted a plan to you for reduced USMS spending and a redistribution of anticipated spending among the USMS's various functions. This plan raises the question whether the Attorney General may reprogram funds among various USMS functions in order to fulfill the purposes of the Antideficiency Act.

The existence of such general reprogramming authority is clear. Congress implicitly recognized such authority in § 8 of the Department of Justice Appropriation Authorization Act for Fiscal Year 1980, Pub. L. No. 96-132, 93 Stat. 1040, 1046 (1979), which requires the Attorney General to report to Congress concerning the circumstances of certain reprogrammings.[2]

It is also the rule that such reprogramming authority extends to the expenditure of funds under lump sum appropriations. The Comptroller General has taken the position that a lump sum appropriation may be used for any authorized purpose, even if the legislative history of the appropriation statute prescribes specific priorities with regard to allocating funds among authorized purposes. *See e.g., Newport News Shipbuilding and Dry Dock Co.,* 55 Comp. Gen. 812, 819-21 (1976); *LTV Aerospace Corp.,* 55 Comp. Gen. 307, 318-19 (1975). We have recently examined this issue in a related context and have reached the same conclusion.[3] By the same token, the absence in the terms of an appropriations act of a prohibition against certain expenditures under that appropriation implies that Congress did not intend to impose restraints upon an agency's flexibility in shifting funds among activities or functions within a particular lump sum account.[4] Funds for the USMS for

---

[1] Under limited circumstances, *e.g.,* when laws requiring expenditures have been enacted subsequent to the transmittal to Congress of an agency budget estimate, the Antideficiency Act permits apportionments to be made that anticipate the need for supplemental appropriations. 31 U.S.C. § 665(e).

[2] Under this section each organizational component of the Department is required to give 15 days' notice to specified congressional committees of any decision to "reprogram" funds in excess of a certain amount. Notification must be given whenever funds are shifted from one "program" to another, as that term is defined in the Department's budget submission to Congress.

[3] *See* Memorandum Opinion of June 5, 1980, to the Deputy Attorney General, "Use of Law Enforcement Assistance Administration Program Grant Funds for Administrative Purposes" [p. 674 *supra*].

[4] *See* Fisher, *Reprogramming of Funds by the Defense Department,* 36 The Journal of Politics 77, 78 (1974):

> The [congressional] committees and the agencies recognize that it is often necessary and desirable to depart from budget justifications. The Department of Defense must estimate months and sometimes years in advance of the actual obligation and expenditure of funds. As the budget year unfolds, new and better applications of money come to light. Reprogrammings are made for a number of reasons, including unforeseen

Continued

the current fiscal year were appropriated as part of a lump sum account covering expenses of United States Attorneys, the USMS, and the United States Trustees. *See* Pub. L. No. 96–68, 93 Stat. 416, 420 (1979). Nothing in the terms of the Department's 1980 Appropriations Act suggests that funds must be allocated among the three programs funded by that account in any particular manner.

We believe that, as a general matter, the agency head's discretion to reprogram appropriated funds within or among programs in a lump sum account in an antideficiency situation would be limited only if a specific statutory directive required the expenditure or distribution of funds in a particular manner. In *City of Los Angeles* v. *Adams,* 556 F.2d 40, 49–50 (D.C. Cir. 1977), the D.C. Circuit affirmed this proposition:

> If Congress does not appropriate enough money to meet the needs of a class of beneficiaries prescribed by Congress, and if Congress is silent on how to handle this predicament, the law sensibly allows the administering agency to establish reasonable priorities and classifications.

In an analogous situation, the Supreme Court, in *Morton* v. *Ruiz,* 415 U.S. 199, 230–31 (1974), recognized an agency head's "power to create reasonable classifications and eligibility requirements in order 'to allocate the limited funds available to him." Limitations on this discretion might take the form of a line-item appropriation specifically required to be expended in full during the fiscal year for one particular activity and no other. Or they might take the form of a provision in an authorizing statute specifying a particular manner of apportionment, or indicating congressional intent to continue one particular activity at the expense of others in an antideficiency situation.[5]

We have examined the statutes that prescribe the authority and duties of the USMS and are satisfied that they place no limitation on the Attorney General's discretion to reprogram funds for USMS activities in such a way as will ensure both compliance with the Antideficiency Act and the most efficient and effective performance of the USMS's

developments, changing requirements, incorrect price estimates, wage-rate adjustments, changes in the international situation, and legislation enacted subsequent to appropriations.

It is significant that Congress has explicitly recognized this flexibility in the executive branch. *See e.g.,* H.R. Rep. No. 662, 93d Cong., 1st Sess. 16 (1973); H.R. Rep. No. 1607, 87th Cong., 2d Sess. 21 (1962); H.R. Rep. No. 408, 86th Cong., 1st Sess. 20 (1959).

[5] For example, in *City of Los Angeles* v. *Adams, supra,* the court held that congressional curtailment of funding in an appropriations statute did not justify the Federal Aviation Administration's departure from statutory provisions requiring funds to be apportioned in a specific manner. *Compare Scholder* v. *United States,* 428 F. 2d 1123 (9th Cir. 1970), *cert. denied,* 400 U.S. 942 (1970) where the court rejected a claim that the Bureau of Indian Affairs' expenditure of appropriated funds on an Indian irrigation project, part of which would benefit solely non-Indians, was unauthorized. In doing so, it stated that "if Congress had wanted to impose on the Bureau the restrictions urged by appellants, it could have done so easily." 428 F. 2d at 1129.

overall mission when a deficiency is threatened.[6] In the absence of statutory restrictions, the Attorney General has the discretion to determine how projected deficiencies in total appropriations available for the fiscal year shall be distributed among the various functions the USMS is authorized to perform.[7]

John M. Harmon
*Assistant Attorney General*
*Office of Legal Counsel*

---

[6] Section 569 of Title 28, United States Code, describes generally the powers and duties of the United States marshals. Subsection (c) provides that the Attorney General "shall supervise and direct United States marshals in the performance of public duties and accounting for public moneys." Subsection (a) states that the United States marshal of each district "may, in the discretion of the [district court] be required to attend any session of court." So far as we can determine from the legislative history of these two provisions, subsection (a) was not intended to operate as a limit on the supervisory authority given the Attorney General in subsection (c). We believe that the most reasonable explanation of the discretion given the courts under subsection (a) is that it was intended to permit them to relieve the marshal of his responsibility to attend every session, rather than give the courts some independent authority to supervise and direct the marshal which would overlap that of the Attorney General in § (c).

We are aware of no provision in any other statute which limits the Attorney General's discretion to supervise and direct the marshals in carrying out their responsibilities under law.

[7] Even a decision to discontinue entirely one of several authorized functions funded by a lump sum account because of a shortfall in appropriations would, we believe, be within the Attorney General's discretion. *Cf.* Comptroller General Decision B-115398 at 12, June 23, 1977 ("Neither the Comptroller General nor the courts are authorized under the [Impoundment Control] Act to constrain the Executive branch in the way the funds are to be used once released").